350 A.2d 407
**COMMONWEALTH of Pennsylvania**
v.
**John ABNEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 20, 1975.

Decided Jan. 29, 1976.

Hardy Williams, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On October 1, 1973, appellant John Abney was found guilty after a non-jury trial of murder in the second degree, aggravated assault and criminal conspiracy. After post-trial motions were denied and judgment of sentence of two to fifteen years imprisonment imposed, direct appeal was taken to the Superior Court. The appeal was transferred to the Supreme Court because of our jurisdiction in homicide cases.[1] While the appeal was pending appellant petitioned this Court to remand the case for an evidentiary hearing. The Commonwealth consented to the request for remand. On September 24, 1974, this Court entered a per curiam order remanding the case. This appeal was taken following denial of post verdict relief. Appellant alleges that his trial counsel was ineffective.[2] We agree, reverse the judgment of sentence and grant a new trial.

On June 10, 1973, Henry Amason was attacked and beaten by a group of young people as he walked along a street in Philadelphia. A few days later Amason died from head injuries suffered in the attack.

Minutes after the attack, appellant, who was then sixteen years old, was arrested while standing on a street corner near the scene of the attack. An eyewitness to the attack, James Artison, was accompanying police on a drive through the area when he spotted appellant and identified him as one of the assailants.

1. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202, 17 P.S. § 211.201(1) (Supp.1975).

2. Our disposition of this case makes it unnecessary for us to consider appellant's other assignments of error: (1) that he is entitled to a new trial on the basis of after-discovered evidence; (2) that he was deprived of due process of law because the Commonwealth withheld exculpatory evidence, see *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) that appellant did not knowingly and intelligently waive his right to jury trial.

Shortly after the attack, police questioned and took a statement from a ten year old girl who was an eyewitness to the incident. Although the girl gave a statement which was false insofar as she tried not to inculpate her uncle who later plead guilty to the homicide, the witness stated that she did not see appellant at the scene of the crime. There is a dispute concerning whether police made known to counsel that this young eyewitness offered evidence favorable to appellant. The post-conviction hearing Court found that this witness was known to counsel before trial.

Through the diligent efforts of appellant's mother defense counsel was able to locate other eyewitnesses before trial. One eyewitness, a Mr. Hendricks, told appellant's mother and trial counsel that he was with Artison at the time of the attack. He said he saw three people involved, none of whom fit appellant's description. Trial counsel testified at the post-conviction hearing that he spoke with Hendricks the day before the trial. He said Hendricks did not want to testify because he was scared, but also said that Hendricks did not retract his earlier statement favorable to appellant.

Appellant's mother repeatedly contacted trial counsel and police to provide them with the fruits of the inquiries she had been making in the neighborhood. Mrs. Abney believed that if she could locate the assailants her son would be released. Our review of the record indicates that Mrs. Abney was instrumental in leading police to Gary and Melvin Johnson who later plead guilty.[3] She also uncovered the apparent motive for the attack— a private dispute involving the Johnson's, their sister, and the victim.

---

**3.** Gary Johnson plead guilty in January 1974 and was sentenced to five years probation. Melvin Johnson was arrested on November 9, 1973 and plead guilty to involuntary manslaughter and received a sentence of five years probation.

Gary Johnson was arrested and charged with the crime two weeks after the arrest of appellant. Johnson gave police a statement admitting the participation of himself and his brother but exculpating appellant. Johnson said he did not see appellant at the scene of the attack.[4] Melvin Johnson later gave a statement which also said appellant was not present at the altercation.

At trial the Commonwealth's case rested on the testimony of the eyewitness Artison. Artison testified that he was visiting a friend when he saw the gang attack the victim, who was walking on the sidewalk across the street from Artison. He rushed to aid the victim who was being beaten by several people. As he approached the crowd one of the assailants struck him on the arm and hand with a knife. Artison identified appellant as the knife-wielding assailant. The Commonwealth offered no other evidence to link appellant to the crime.

At the close of the Commonwealth's case on the morning trial began, appellant's counsel informed the court that witnesses were subpoenaed to appear at his office at 12:30. The court admonished counsel for not directing the witnesses to appear in court that morning. The court said, "From what you say, I presume you are not ready to go forward?" Counsel replied, "I am ready to go forward. I do have two witnesses here."

After the luncheon recess, during which trial counsel attempted to locate other witnesses by telephone, the defense presented its case. The record gives no indication

---

4. There is a dispute whether trial counsel was informed by police prior to trial that Gary Johnson had given a statement exculpating appellant which was withheld by the Commonwealth. The post-conviction hearing court found that trial counsel was aware before trial that Gary Johnson had been arrested and was a potential defense witness.

that counsel sought a continuance or bench warrants to produce witnesses.[5]

The defense offered only three witnesses. Appellant testified that at the time of the crime he was sitting on the steps of his home around the corner from where the attack took place. The other defense witnesses, a friend and a neighbor, gave testimony to corroborate appellant's alibi. The trial judge, as factfinder, apparently chose to believe the Commonwealth's eyewitness and returned a verdict of guilty.

Though, as the post-conviction hearing court found, trial counsel knew of at least four eyewitnesses (the young girl, Mr. Hendrickson, Gary Johnson and Melvin Johnson) who could testify to exculpate appellant, none was presented at trial. The record provides no explanation for counsel's failure to produce, or make a serious effort to produce, these witnesses.

To determine whether counsel's failure to present favorable witnesses constituted constitutionally ineffective assistance of counsel, we look to the standard established in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

> "Counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis."

**5.** Trial counsel stated at the post-conviction hearing that he requested either a continuance or bench warrants to produce witnesses. The parties make conflicting claims in the briefs as to whether such requests were made. No such requests, however, appear in the trial record.

In *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975), we considered the failure of defense counsel to present a witness who had testified at an earlier proceeding. We stated, in determining whether the failure to call a witness constituted ineffective assistance of counsel:

> "If counsel's decision not to secure [the witness'] appearance . . . was based on a reassessment of its worth and a conclusion that it was of little or no value in the posture of this case, then that decision clearly had some reasonable basis designed to effectuate [the client's] interests. In such circumstances, counsel's conduct would not constitute ineffectiveness. See *Commonwealth ex rel. Washington v. Maroney,* supra. Had counsel reached this decision on a basis designed to advance his client's interest, this case would be analogous to those situations in which, as a matter of trial strategy, counsel decides not to call a witness at all. (Citations omitted.)

> "If, however, counsel's failure to seek compulsory process to obtain [the witness'] testimony . . . was the result of sloth or lack of awareness of the available alternatives, then his assistance was ineffective. *In a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives available to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow upon the Commonwealth's witness's truthfulness is ineffective assistance of counsel."*

460 Pa. at 111, 331 A.2d at 443. (emphasis added.)

Here appellant was convicted on the strength of the testimony and credibility of one Commonwealth witness. No significant effort was made to produce any of at least four other known eyewitnesses to challenge the Commonwealth's version of the facts. On this record counsel's

310

failure to present any or all of the other eyewitnesses cannot be said to have been reasonably designed to effectuate the client's interests.[6]   As explained in *Twiggs*, such failure constitutes ineffective assistance of counsel.

Judgment of sentence reversed and new trial granted.

6.  The Commonwealth contends that counsel's failure to call "Doc" Hendricks was reasonable because of Hendricks' reluctance to testify.   We reject this contention because trial counsel knew that, as of the day before trial, Hendricks did not retract his statement favorable to appellant.   Moreover Hendricks had been subpoenaed and trial counsel expected Hendricks to appear notwithstanding his earlier expression of reluctance.

Whether counsel acted reasonably in not calling Virginia Gore, an alibi witness who later retracted her statement, as the Commonwealth contends, need not be considered here in view of our conclusion that the failure to produce the other witnesses constituted ineffective assistance.